1

2

3

4

5

6

7

8                       IN THE UNITED STATES DISTRICT COURT

9                   FOR THE EASTERN DISTRICT OF CALIFORNIA

10   SALLY ANN BOWEN,

11           Plaintiff,                    No. CIV S-04-2692 PAN

12        vs.

13
     JO ANNE B. BARNHART,
14   Commissioner of Social Security,

15           Defendant.                    ORDER
     _____/
16

17           The case is before the undersigned pursuant to 28 U.S.C. § 636(c)(consent to

18   proceed before a magistrate judge).  Plaintiff seeks judicial review of a final decision of the

19   Commissioner of Social Security ("Commissioner") denying an application for Supplemental

20   Security Income ("SSI") under Title XVI of the Social Security Act ("Act").  For the reasons

21   discussed below, the court will deny plaintiff's motion for summary judgment or remand and

22   grant the Commissioner's cross-motion for summary judgment.

23   /////

24   /////

25   /////

26   /////

I. Factual and Procedural Background

In a decision dated August 12, 2004, the ALJ determined plaintiff was not disabled.[1]  The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied plaintiff's request for review.  The ALJ found plaintiff had the severe impairments of low back pain due to degenerative disc disease, an anxiety related disorder, and probably borderline intellectual functioning, but that these impairments did not meet or medically equal a listed impairment; plaintiff's allegations regarding her pain and mental impairments were not credible; plaintiff had the residual functional capacity to perform light, unskilled work; plaintiff was capable of lifting 20 pounds occasionally and 10 pounds frequently; plaintiff was

---

[1] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. § 401 et seq.  Supplemental Security Income ("SSI") is paid to disabled persons with low income. 42 U.S.C. § 1382 et seq.  Under both provisions, disability is defined, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment." 42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A).  A five-step sequential evaluation governs eligibility for benefits.  See 20 C.F.R. §§ 423(d)(1)(a), 416.920 & 416.971-76; Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987).  The following summarizes the sequential evaluation:

> Step one:  Is the claimant engaging in substantial gainful activity?  If so, the claimant is found not disabled.  If not, proceed to step two.
> Step two:  Does the claimant have a "severe" impairment?  If so, proceed to step three.  If not, then a finding of not disabled is appropriate.
> Step three:  Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1?  If so, the claimant is automatically determined disabled.  If not, proceed to step four.
> Step four:  Is the claimant capable of performing his past work?  If so, the claimant is not disabled.  If not, proceed to step five.
> Step five:  Does the claimant have the residual functional capacity to perform any other work?  If so, the claimant is not disabled.  If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process.  Bowen, 482 U.S. at 146 n.5.  The Commissioner bears the burden if the sequential evaluation process proceeds to step five.  Id.

1  capable of walking, standing, and sitting for up to six hours in an eight hour workday; plaintiff

2  could only occasionally push or pull with her upper extremities, climb, kneel, stoop, crouch,

3  crawl, or lift overhead; plaintiff was unable to perform her past relevant work as an in-home care

4  provider or security guard; plaintiff was able to perform her past relevant work as a manicurist;

5  and plaintiff was not disabled.  Administrative Transcript ("AT") 19-20.  Plaintiff contends that

6  the ALJ improperly evaluated her credibility and erred by not employing a vocational expert to

7  determine plaintiff's residual functional capacity.

8  II.  Standard of Review

9          The court reviews the Commissioner's decision to determine whether (1) it is

10  based on proper legal standards under 42 U.S.C. § 405(g), and (2) substantial evidence in the

11  record as a whole supports it.  Copeland v. Bowen, 861 F.2d 536, 538 (9th Cir. 1988) (citing

12  Desrosiers v. Secretary of Health and Human Services, 846 F.2d 573, 575-76 (9th Cir. 1988)).

13  Substantial evidence means more than a mere scintilla of evidence, but less than a

14  preponderance.  Saelee v. Chater, 94 F.3d 520, 521 (9th Cir. 1996) (citing Sorenson v.

15  Weinberger, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975)).  "It means such relevant evidence as a

16  reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402

17  U.S. 389, 402, 91 S. Ct. 1420 (1971) (quoting Consolidated Edison Co. v. N.L.R.B., 305 U.S.

18  197, 229, 59 S. Ct. 206 (1938)).  The record as a whole must be considered, Howard v. Heckler,

19  782 F.2d 1484, 1487 (9th Cir. 1986), and both the evidence that supports and the evidence that

20  detracts from the ALJ's conclusion weighed.  See Jones v. Heckler, 760 F.2d 993, 995 (9th Cir.

21  1985).  The court may not affirm the ALJ's decision simply by isolating a specific quantum of

22  supporting evidence.  Id.; see also Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989).  If

23  substantial evidence supports the administrative findings, or if there is conflicting evidence

24  supporting a finding of either disability or nondisability, the finding of the ALJ is conclusive, see

25  Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987), and may be set aside only if an

26  /////

1   improper legal standard was applied in weighing the evidence, see Burkhart v. Bowen, 856 F.2d

2   1335, 1338 (9th Cir. 1988).

3   III.  Analysis

4         a.  The ALJ's Assessment of Plaintiff's Credibility was Proper.

5               The ALJ found plaintiff's complaints of disabling pain and other impairments not

6   credible.  AT 19.  The ALJ relied upon multiple factors in reaching this conclusion.  The ALJ

7   noted that the medical evidence did not support plaintiff's complaints.  AT 13.  Furthermore, the

8   ALJ cited multiple examples of apparent exaggerations in or inconsistencies with plaintiff's

9   complaints that cast doubt upon her credibility.  AT 16.  Finally, the ALJ noted the inconsistency

10  between plaintiff's complaints and her daily activities.  AT 18.  The ALJ's findings were not in

11  error.

12              The ALJ determines whether a disability applicant is credible, and the court defers

13  to the ALJ's discretion if the ALJ used the proper process and provided proper reasons.  See, e.g.,

14  Saelee v. Chater, 94 F.3d 520, 522 (9th Cir. 1995).  If credibility is critical, the ALJ must make

15  an explicit credibility finding.  Albalos v. Sullivan, 907 F.2d 871, 873-74 (9th Cir. 1990); Rashad

16  v. Sullivan, 903 F.2d 1229, 1231 (9th Cir. 1990) (requiring explicit credibility finding to be

17  supported by "a specific, cogent reason for the disbelief").

18              In evaluating whether subjective complaints are credible, the ALJ should first

19  consider objective medical evidence and then consider other factors.  Bunnell v. Sullivan, 947

20  F.2d 341, 344 (9th Cir. 1991) (en banc).  If there is objective medical evidence of an impairment,

21  the ALJ then may consider the nature of the symptoms alleged, including aggravating factors,

22  medication, treatment and functional restrictions.  See id. at 345-47.  The ALJ also may consider:

23  (1) the applicant's reputation for truthfulness, prior inconsistent statements or other inconsistent

24  testimony, (2) unexplained or inadequately explained failure to seek treatment or to follow a

25  prescribed course of treatment, and (3) the applicant's daily activities.  Smolen v. Chater, 80 F.3d

26  1273, 1284 (9th Cir. 1996); see generally SSR 96-7P, 61 FR 34483-01; SSR 95-5P, 60 FR

1   55406-01; SSR 88-13.  Work records, physician and third party testimony about nature, severity

2   and effect of symptoms, and inconsistencies between testimony and conduct also may be

3   relevant.  Light v. Social Security Administration, 119 F.3d 789, 792 (9th Cir. 1997).  A failure

4   to seek treatment for an allegedly debilitating medical problem may be a valid consideration by

5   the ALJ in determining whether the alleged associated pain is not a significant nonexertional

6   impairment.  See Flaten v. Secretary of HHS, 44 F.3d 1453, 1464 (9th Cir. 1995).   The ALJ

7   may rely, in part, on his or her own observations, see Quang Van Han v. Bowen, 882 F.2d 1453,

8   1458 (9th Cir. 1989), which cannot substitute for medical diagnosis.  Marcia v. Sullivan, 900

9   F.2d 172, 177 n.6 (9th Cir. 1990).  Without affirmative evidence of malingering, the

10   Commissioner's reasons for rejecting the claimant's testimony must be clear and convincing."

11   Morgan v. Commissioner of Social Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999).

12          Plaintiff alleged multiple physical and mental impairments that precluded her

13   from working.  Specifically, plaintiff complained of back pain, sciatica, imbalance or instability

14   in her legs that caused her to fall.  AT 86, 88.  In addition, plaintiff stated that she suffered from

15   impaired memory and panic attacks, mental impairments that led to agoraphobia.

16          Plaintiff testified that her physical ailments limited her to no more than 30

17   minutes walking or standing and 25 minutes sitting.  AT 45-46.  Plaintiff testified that the only

18   position in which she experienced long-term relief was lying down.  AT 46.  Plaintiff also stated

19   that she was unable to lift 10 pounds, a specific weight she was familiar with because she could

20   no longer lift a 10 pound sack of potatoes.  AT 46.

21          The ALJ noted that the objective medical evidence did not support the level of

22   pain and mental impairment complained of by plaintiff.  AT 13.  Plaintiff claimed to seriously

23   injure her back when she slipped on a hard bathroom floor on September 6, 2002, at the daycare

24   where she was employed, aggravating an existing injury.  AT 47.  However, medical examination

25   did not document any significant findings to confirm such an injury.

26   /////

1    Following her fall and the alleged aggravation of her back injury, plaintiff initially

2    declined treatment, only seeking relief from worker's compensation four days later.  AT 186.

3    The record shows that plaintiff made her tardy claim after receiving notice of her possible

4    termination from her job at the daycare because of her failure to report a conviction for welfare

5    fraud.  AT 153.  Given the acute nature of plaintiff's injury, her failure to promptly seek

6    treatment when it was available to her casts some doubt upon her complaints of disabling pain.

7    Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989).

8    A physical examination conducted on September 11, 2002, in conjunction with

9    her worker's compensation claim was "normal."  AT 187.  Doctors found nothing abnormal in an

10   X-ray following her fall in spite of her claim of injury to her back and knee.  AT 187.  Radiologic

11   examinations of plaintiff's spine at that time showed only mild degenerative disc disease and no

12   evidence of significant abnormality.  AT 165-66.  By October 14, 2002, doctors found plaintiff

13   able to return to semi-sedentary work.  AT 155.  By November 6, 2002, plaintiff was cleared to

14   resume her job at the daycare, restricted only to lifting no more than 10 pounds.  AT 193.

15   Subsequent examinations of plaintiff and evaluations of the medical evidence

16   confirmed this opinion that plaintiff was able to return to work.  Examining orthopedist, Dr.

17   Roberson, noted numerous objective findings which did not support plaintiff's allegations.  AT

18   237-240.  Dr. Roberson concluded that plaintiff was capable of lifting 20 pounds occasionally

19   and 10 pounds frequently.  AT 240.  In Dr. Roberson's opinion, plaintiff could stand, walk, and

20   sit for six hours in an eight hour workday, with only occasional lifting of objects over her head.

21   Id.

22   Doctors with the state Disability Determination Service (DDS) concurred with

23   most of Dr. Roberson's opinion, finding little medical evidence to support plaintiff's complaints

24   of physical impairment.  After a review of the medical record, the non-examining doctors with

25   DDS found plaintiff capable of lifting 20 pounds occasionally and 10 pounds frequently and

26   standing, walking, and sitting for up to six hours in an eight hour workday.  AT 207.

1   Additionally, the DDS doctors found plaintiff only occasionally able to push and pull with her

2   upper extremities, lift overhead, and climb, stoop, kneel, crouch, and crawl.  AT 207-09.

3            These medical opinions contrasted sharply with that of treating physician, Dr.

4   Cheema.  Dr. Cheema diagnosed plaintiff with chronic back pain, anxiety and depression.  AT

5   233-35.  As a result, Dr. Cheema found plaintiff to be disabled, unable to perform even sedentary

6   work.  Id.

7            The ALJ properly discounted Dr. Cheema's opinion as it was unsupported by any

8   evidence in the record.  AT 17.  Dr. Cheema stated that he had seen plaintiff for nearly 10 years.

9   However, he failed to provide any medical records that demonstrated the longitudinal nature of

10  his treatment or supported his opinion.  AT 31.  See Batson, 359 F.3d at 1195 (giving minimal

11  weight to treating physician's opinions when clinical findings are not present); Young v. Heckler,

12  803 F.2d 963, 968 (9th Cir. 1988)(discrediting medical opinion of treating physician who had

13  prior relationship with claimant where only report in record was in conclusory form).  Dr.

14  Cheema's opinion is supported by no evidence, neither X-rays, MRIs, nor even treatment notes,

15  that might bolster his conclusion.  Given no weight and without any evidence, Dr. Cheema's

16  opinion cannot provide any objective evidence to support plaintiff's subjective complaints.

17           The ALJ's decision to discredit the conclusory opinion of plaintiff's treating

18  physician was not in error.  The weight given to medical opinions depends in part on whether

19  they are proffered by treating, examining, or non-examining professionals.  Lester v. Chater, 81

20  F.3d 821, 830 (9th Cir. 1995).  Ordinarily, more weight is given to the opinion of a treating

21  professional, who has a greater opportunity to know and observe the patient as an individual. Id.;

22  Smolen, 80 F.3d at 1285.

23           To evaluate whether an ALJ properly rejected a medical opinion, in addition to

24  considering its source, the court considers whether (1) contradictory opinions are in the record;

25  and (2) clinical findings support the opinions.  An ALJ may reject an uncontradicted opinion of a

26  treating or examining medical professional only for "clear and convincing" reasons.  Lester , 81

F.3d at 831.  In contrast, a contradicted opinion of a treating or examining professional may be rejected for "specific and legitimate" reasons.  Lester, 81 F.3d at 830.  While a treating professional's opinion generally is accorded superior weight, if it is contradicted by a supported examining professional's opinion (supported by different independent clinical findings), the ALJ may resolve the conflict.  Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995) (citing Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989)).  In any event, the ALJ need not give weight to conclusory opinions supported by minimal clinical findings.  Meanel v. Apfel, 172 F.3d 1111, 1113 (9th Cir. 1999) (treating physician's conclusory, minimally supported opinion rejected); see also Magallanes, 881 F.2d at 751.  The opinion of a non-examining professional, without other evidence, is insufficient to reject the opinion of a treating or examining physician.

As noted by the ALJ, Dr. Cheema's opinion contradicted the opinions of Dr. Roberson as well as the DDS.  The lack of any objective support for Dr. Cheema's opinion is a specific and legitimate reasons for discounting the conclusion of the treating physician.  The ALJ's refusal to give credit to Dr. Cheema's opinion in light of the other medical evidence in the record was proper.

In addition to her physical ailments, plaintiff also complained of disabling mental impairments.  According to plaintiff, she suffered from panic attacks on a near-daily basis that lasted for up to three hours and caused her to avoid public contact.  AT 35.  On at least one occasion, plaintiff reported a panic attack that forced her to hide in her closet for four days, leaving only to use the bathroom.  Id.  However, as with her physical complaints, the ALJ also noted the lack of evidence to support plaintiff's allegations.  AT 14.

The first evidence of any psychiatric evaluation addressing plaintiff's mental impairments occurred in the course of her application for benefits.  At the time of her evaluation by examining psychiatrist Dr. Canty on December 7, 2002, plaintiff did not indicate that she suffered from any mental impairment which would preclude her from work.  AT 202.  Upon being asked about her anxiety, plaintiff stated that it was under control as a result of medication

1 and self-taught coping mechanisms.  Id.  Plaintiff denied any prior treatment by a mental health

2 professional.  Id.

3      Dr. Canty found plaintiff had a panic-attack disorder that appeared under

4 control.  AT 204.  Furthermore, he noted that plaintiff had borderline intellectual functioning.

5 AT 205.  According to Dr. Canty, plaintiff had a Global Assessment of Functioning (GAF) score

6 of 85-90.[2]  Id.

7      Dr. Canty found plaintiff capable of performing simple, repetitive work.  Id.

8 While he opined that plaintiff might have some difficulty with complex tasks, Dr. Canty found

9 no limitations in plaintiff's ability to interact with coworkers, supervisors, or the public.  Id.  Dr.

10 Canty did note that a stressful workplace might be difficult for plaintiff.  Id.

11      This optimistic assessment of plaintiff's abilities was echoed by the DDS.  The

12 non-examining doctor with DDS found plaintiff mildly impaired in her activities of daily living,

13 and her ability to maintain social functioning, concentration, persistence and pace.  AT 228.  The

14 result was that, while plaintiff suffered moderate impairment in her ability to understand,

15 remember and carry out detailed instructions, as well as her ability to respond appropriately to

16 changes in the work setting, AT 214-15, she retained the ability to perform competitive

17 employment, AT 216.

18      In contrast, an examination conducted on May 6, 2004, five months after the

19 hearing with the ALJ, found plaintiff to be significantly disabled.  Examining psychiatrist Dr.

20 /////

21 /////

22 /////

23

24    [2]GAF is a scale reflecting the "psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness." Diagnostic and Statistical Manual of Mental

25 Disorders at 34 (4th ed. 2000) ("DSM IV-TR").  A GAF of 81-90 indicates absent or minimal symptoms, good functioning in all areas, interested and involved in a wide range of activities,

26 socially effective, generally satisfied with life, no more than everyday problems or concerns.  Id.

1  Powell found plaintiff suffering from panic disorder with moderate major depressive symptoms.

2  AT 249.  Dr. Powell assigned plaintiff a GAF score of 60[3] and opined that she was unable to

3  maintain employment because of problems with her concentration and ability to interact with

4  others.  Id.

5          The ALJ discounted this contrary opinion, giving it little weight.  As noted above,

6  this opinion differed sharply from that offered by Dr. Canty and the DDS.  According to the ALJ,

7  the record is devoid of any objective evidence supporting such a divergent opinion.  AT 18.

8          The ALJ found that Dr. Powell based a substantial part of her opinion upon

9  plaintiff's subjective complaints.  AT 18.  Given the ALJ's conclusion that plaintiff lacks

10  credibility, the ALJ determined that the quality of Dr. Powell's opinion was tainted.  While

11  substantial evidence does support the conclusion that plaintiff lacked credibility, without more, it

12  cannot automatically lead to a conclusion that Dr. Powell's opinion is entitled to lesser weight.[4]

13          Credibility determinations do factor into evaluations of medical evidence.  Webb

14  v. Barnhart, 433 F.3d 683, 688 (9th Cir. 2005); see e.g. Batson, 359 F.3d at 1195.  When there

15  are legitimate reasons to doubt a plaintiff's complaints, the opinions upon which those

16  complaints are based are also questionable.  See Morgan, 169, F.3d at 602 ("A physical opinion

17  of disability 'premised to a large extent upon the claimant's own accounts of [her] symptoms and

18  limitations' may be disregarded where those complaints have been 'properly discounted.'"

19  (quoting Fair v. Bowen, 885 F.2d 597, 605 (9th Cir. 1989)))  Despite the legitimate bases upon

20  /////

---

21

22      [3]A GAF of 51-60 indicates moderate symptoms (e.g., flat affect and circumstantial
speech, occasional panic attacks) or moderate difficulty in social, occupational, or school
function (e.g., few friends, conflicts with peers or co-workers.)  Id.

23

24      [4]Plaintiff does not make any claim that the ALJ erred in his weighing of the medical
evidence.  However, the court is examining this issue because of its impact on the credibility
determination.  The ALJ noted a lack of objective medical evidence to support plaintiff's
25  complaints.  Assessing the weight the ALJ gave to the various medical opinions and the propriety
of that weighing is necessary in order to determine whether or not the ALJ's conclusion
26  regarding the absence of evidence to support plaintiff's complaints is in fact correct.

1  which the ALJ discredited plaintiff's testimony, discrediting Dr. Powell's opinion because of her

2  reliance on plaintiff's own subjective complaints was in error.

3        Dr. Powell performed a comprehensive examination of plaintiff's past history as

4  well as her current symptoms.  AT 246-47.  In addition, Dr. Powell conducted multiple

5  intellectual functioning assessments, including tests designed to measure orientation, memory,

6  fund of knowledge, calculations, concentration, abstract thinking, similarities and differences,

7  and insight and judgment.  AT 248-49.  This examination was exactly the same as Dr. Canty's

8  examination of plaintiff.  AT 202-205.  To  discredit Dr. Powell's opinion because of its excess

9  reliance on plaintiff's subjective complaints when that examination was no different that Dr.

10  Canty's was in error.

11        As presumed by the ALJ, subjective complaints of disability formed a larger part

12  of Dr. Powell's opinion because of the absence of any significant mental health treatment in the

13  sixteen months since Dr. Canty examined plaintiff.  The only evidence of mental health treatment

14  during that time came on January 14, 2003, when plaintiff received a prescription for Paxil from

15  Dr. Kai.  AT 198.  In addition, plaintiff told Dr. Powell that her condition deteriorated as a result

16  of the fact that she no longer took her medication because she could no longer pay for it.  AT

17  246.  For the ALJ, the lack of objective evidence and treatment documenting a decline in

18  plaintiff's condition along with her cessation of medications since her examination by Dr. Canty

19  was a reason to give less weight to Dr. Powell's findings.

20        The ALJ found a similar lack of treatment undermined plaintiff's subjective

21  complaints of pain.  According to the ALJ, there was a notable lack of medical treatment

22  consistent with someone suffering from the level of impairment claimed by plaintiff.  AT 16.[5]

23  However, plaintiff's failure to seek treatment or continue her medications is not an acceptable

24

25        [5]The ALJ mischaracterized the evidence in the record when he stated that plaintiff fell
    three times in a week.  AT 16.  The transcript shows plaintiff testified to falling three times in
26  one month.  AT 43.  Such frequency is still significant, and this mischaracterization does not
    change the tenor of the ALJ's argument.

1  basis in this case upon which to attack plaintiff's credibility or to discredit the opinion of Dr.

2  Powell.

3          The failure to seek medical help is not a legitimate factor upon which to assess

4  credibility when that failure is caused by an inability to pay for treatment.  See Smolen, 80 F.3d

5  at 1284 (proscribing rejection of [plaintiff's] complaints for lack of treatment when the record

6  clearly establishes plaintiff could not afford it).  The plaintiff bears the burden of establishing in

7  the record an inability to pay for medical care.  Plaintiff met that burden in this case and the ALJ

8  found that plaintiff was uninsured and indigent during the time of her alleged deterioration.  AT

9  16.

10          Furthermore, as it concerned plaintiff's complaints of back and leg pain causing

11  her to fall, the ALJ misstated the frequency of plaintiff's falls.  According to the ALJ, plaintiff

12  fell three times in a week.  AT 16.  However, the testimony at the hearing was that plaintiff fell

13  three times in a month.  AT 43.

14          In the end, the ALJ was left with a choice between contrasting medical opinions.

15  On the one hand, Dr. Canty and the DDS found plaintiff relatively capable of work.  On the other

16  hand, Dr. Powell made significant findings tending towards disability.  The ALJ is tasked with

17  resolving conflicts in the evidence such as these.  Sample v. Schweiker, 694 F.2d 639, 642 (9th

18  Cir. 1982).  In this case, the ALJ favored the less restrictive opinion of Dr. Canty and the DDS.

19          Based upon the objective medical evidence in the record, limited as it was, it was

20  harmless error for the ALJ to give lesser weight to Dr. Powell's opinion.  See Curry v. Sullivan,

21  925 F.2d 1127, 1129 (9th Cir. 1990) (harmless error analysis applicable in judicial review of

22  social security cases).  The ALJ did rely on a number of impermissible justifications for his

23  weighing of the medical evidence.  However, as noted below, the record shows that for the period

24  in which plaintiff was able to receive medical treatment, she failed to make any mention of any

25  mental condition that could support her allegations.  This lack of the need for treatment is more

26  /////

1  consistent with Dr. Canty's and the DDS' findings than Dr. Powell's.  While the methodology

2  may have been improper, the ALJ's conclusion was not.

3           The ALJ erroneously relied upon the absence of records to support his conclusion

4  regarding the credibility of plaintiff's complaints of disabling physical pain and mental

5  impairment.  However, it was not error for the ALJ to rely on what is contained, as well as what is

6  not contained, in the records that do exist.  The ALJ viewed this evidence aware of plaintiff's past

7  history of welfare fraud.  AT 15.  While not citing this as a basis for his credibility assessment,

8  plaintiff's conviction for welfare fraud is a legitimate factor for the ALJ to consider in

9  determining that plaintiff was not credible.  The ALJ's implicit reliance on this conviction to

10  judge plaintiff's credibility was not in error.  See Fair, 885 F.2d at 604 n.5 ("We see no reason

11  why ordinary techniques of credibility evaluation should not be applied in SSA disability

12  hearings.")

13           This history of plaintiff's behavior certainly caused the ALJ to question the

14  deteriorating symptoms claimed by plaintiff in her medical examinations.  Plaintiff complained to

15  Dr. Roberson of worsening symptoms since her initial evaluation and the hearing.  AT 237.

16  However, Dr. Roberson found nothing extraordinary in his examination and determined that

17  plaintiff was capable of exactly the same level of function as previous examinations.  AT 17.

18  Furthermore, despite her complaints, plaintiff remained silent during her examination about

19  significant details, including her recent history of falling.

20           Dr. Roberson noted that plaintiff gave only a "fair" effort during her examination.

21  AT 239.  In fact, plaintiff refused to even attempt several exercises, claiming aggravation of her

22  injuries would result.  AT 238.  This lack of cooperation during a consultative examination is a

23  sufficient reason to discredit plaintiff's testimony.  Tonapetyan v. Halter, 242 F.3d 1144, 1148

24  (9th Cir. 2001).

25           The lack of objective evidence in this case to support plaintiff's complaints was

26  significant.  However, because of the very nature of pain, subjective complaints about its severity

1    cannot be dismissed solely by the lack of medical findings.  <u>Bunnell v. Sullivan</u>, 947 F.2d 341,

2    345 (9th Cir. 1991).  The notable absence of verifiable medical evidence from the time when

3    plaintiff had the means to acquire health care was but one factor in the ALJ's determination that

4    plaintiff was not credible.  Plaintiff's own inconsistencies in her application and testimony as it

5    concerned both her physical and mental impairments, as well as other valid concerns about

6    plaintiff's credibility support the ALJ's conclusions.

7         In addition to her uncooperative nature, the dearth of any objective evidence in the

8    face of plaintiff's complaints of worsening physical and mental disabilities caused Dr. Roberson

9    to suspect plaintiff of malingering.  AT 17.  The ALJ noted numerous inconsistencies and

10   apparent exaggerations in plaintiff's testimony and other evidence.  Plaintiff complained of

11   disabling mental problems during the hearing.  AT 35.  However, she remained capable of

12   maintaining mental focus, reading, performing crossword puzzles and doing crafts.  AT 18.

13        In addition, plaintiff complained of daily panic attacks that sometimes forced her

14   hide in her closet.  AT 35.  As a result of these attacks, plaintiff testified that she avoided going

15   shopping, as she was unable to handle the noise, people, and atmosphere of the store.  AT 36.

16   However, this statement seems less than credible given the fact that plaintiff also described the

17   enjoyment she felt working as a preschool assistant and cook, a job with an atmosphere bursting

18   with noise and people.  <u>Id.</u>  Only once did plaintiff report that she suffered a panic attack that

19   caused her to miss work or leave early.  <u>Id.</u>  Furthermore, when describing her time at the

20   preschool, plaintiff stated only that her back pain was the only limitation on her ability to perform

21   the job.  AT 50.

22        Questions about the legitimacy of plaintiff's complaints of mental impairment are

23   also found in her initial application for benefits.  Plaintiff testified that her anxiety attacks had

24   been "persistent" since at least early 2002.  AT 35.  However, in her work history report

25   completed on November 1, 2002, plaintiff's cited only her back problems and her slip and fall as

26   /////

1  the basis for her disability.  AT 86, 88, 107-111.  Only after her initial denial of benefits did

2  plaintiff allege anxiety as a disabling condition.  AT 101.

3          The records in existence casts even more doubt upon plaintiff's complaints of

4  mental impairment.  Plaintiff frequently related that she had taken Paxil, an anti-anxiety

5  medication for a significant period of time.  AT 89, 190.  However, plaintiff's treating physician

6  stated that the only medications he has prescribed for plaintiff during their 10 year relationship are

7  pain medications, anti-spasmocines (sic), and anti-inflammatories, such as Soma and Vicodin.

8  AT 233-34.  AT 198.

9          Furthermore, the record shows plaintiff received regular treatment from August 16,

10  2002, through August 1, 2002.  AT 190-92.  Three examinations occurred in this time, with

11  plaintiff complaining of back, leg, and wrist pain.  Following her accident, plaintiff received

12  biweekly medical care for several months.  AT 155-89.  In none of those visits does plaintiff

13  complain of anxiety, depression, agoraphobia, or any other mental impairment, despite testifying

14  at the hearing on January 9, 2004, that she that she has suffered from "persistent" anxiety attacks

15  for "maybe two, three years."  AT 35.

16          The first complaint of anxiety appearing in the record was during plaintiff's

17  examination by Dr. Canty.  AT 202.  It was during this examination that plaintiff appeared

18  perplexed about why she would need to see a psychiatrist, stating that her sole basis for disability

19  was back pain.  AT 202-05.  The record fails to show any complaint by plaintiff to her doctors of

20  anxiety until January 14, 2003.  AT 198.  This is also the first date in the record containing any

21  medical documentation of a prescription for Paxil.[6]

22          The ALJ utilized numerous improper factors to analyze the credibility of plaintiff.

23  Regardless, these improper applications of the law do not remove the lingering stain to plaintiff's

24

25          [6]Plaintiff claims in her brief to have been diagnosed with anxiety and prescribed Paxil on
    November 6, 2002.  (Plaintiff's Memoranda at 5:21-22.)  The record does not support this
    statement as the medical record from that day shows plaintiff was only evaluated and treated for

26  a painful right wrist.  AT 200.

1  credibility left by the many valid pieces of evidence evaluated by the ALJ.  While not as

2  overwhelming as originally presented, substantial evidence does support the ALJ's findings as

3  they concern plaintiff's credibility.  See Tonapetyan, 242 F.3d at 1148 ("Even if we discount

4  [plaintiff's] inconsistent statements and behavior,..., we are still left with substantial evidence to

5  support the ALJ's credibility determination.")

6          The lack of objective medical evidence supporting any physical impairment in

7  plaintiff's back, or her alleged history of mental impairments, as well as the opinions of

8  examining physicians that plaintiff is physically and mentally capable of work supports the ALJ's

9  findings.  Coupled with the inconsistencies in plaintiff's own statements about her symptoms,

10 including their severity and onset, and legitimate concerns about plaintiff's prior history of

11 fraudulent claims , it provides substantial evidence supporting the ALJ's conclusion.  The ALJ's

12 credibility determination was based on permissible grounds and will not be disturbed.

13     b.  The ALJ's Failure to Elicit Additional Evidence from a Vocational Expert in Order to

14 Resolve the Conflict Between Plaintiff's Residual Functional Capacity and Ability to Perform Her

15 Previous Work was Harmless Error in Light of His Proper Application of the Medical-Vocational

16 Guidelines.

17          The ALJ found plaintiff able to perform her past relevant work as a manicurist.

18 AT 18-19.   Given the sedentary nature of the work and her past history of employment, the ALJ

19 found plaintiff's residual functional capacity permitted her to perform her previous job.  AT 19.

20 This finding was in error.

21          Plaintiff contends that because of her nonexertional limitations,[7] it was incumbent

22 upon the ALJ to obtain the testimony of a vocational expert.  However, this is not a case where

23 the ALJ erroneously relied on the Medical-Vocational Guidelines ("grids")in finding plaintiff was

24

25          [7]  Nonexertional limitations are non-strength related limitations. These include mental, sensory, postural, manipulative, and environmental limitations.  Desrosiers v. Secretary of Health
26 & Human Services, 846 F.2d 573, 579 (9th Cir.1988); 20 C.F.R., Pt. 404, Subpt. P,  Appendix 2, § 200.00(e).

1  no longer disabled[8] despite significant nonexertional limitations Cf. Jones v. Heckler, 760 F.2d

2  993, 998 (9th Cir. 1985) (ALJ may apply grids in lieu of taking the testimony of a vocational

3  expert only when the grids accurately and completely describe the claimant's abilities and

4  limitations); see also Polny v. Bowen, 864 F.2d 661, 663-64 (9th Cir. 1988) (where plaintiff

5  unable to perform past work and has significant nonexertional limitations, then testimony of

6  vocational expert is required to demonstrate the existence of specific jobs that plaintiff claimant is

7  capable of performing despite these restrictions).  The cases relied on by plaintiff simply do not

8  stand for the proposition that every time a plaintiff has mental impairments, a vocational expert

9  must be consulted.  Only where the sequential analysis proceeds to the final step,[9] i.e., where the

10 ALJ is determining whether plaintiff can perform other work when past relevant work cannot be

11 performed, is vocational expert testimony required when significant nonexertional impairments

12 exist.

13         However, the ALJ's failure to call a VE in order to explain the inconsistency

14 between plaintiff's residual functional capacity and the skill required to work as a manicurist was

15 in error.  A manicurist is a sedentary profession. Dictionary of Occupational Title (U.S. Dep't of

16 Labor, 4th ed. rev. 1991)(DOT) §331.674-010.  It carries a specific vocational preparation (SVP)

17 score of three.  Specific vocational preparation scores of three are generally classified as semi-

18 skilled.  SSR 00-4p; see 20 C.F.R. §§ 404.1568, 416.968.

19         The ALJ found plaintiff capable of performing only unskilled work, a skill level

20 below the semi-skilled level of manicurist.  Unskilled work is generally work with an SVP of one

21 or two.  Id.  Despite the inconsistency, the ALJ relied upon the opinion of a vocational specialist

22 /////

23

24         [8]  The ALJ expressly relied on Social Security Ruling 85-15, which supplements the
regulations, providing the manner in which the Secretary will evaluate disability claims when the
25 claimant suffers only "nonexertional" impairments.

26         [9]  In this case the eighth step of the sequential analysis. See 20 C.F.R. § 404.1594(f)(8).

1 (VS) who concluded that plaintiff was capable of performing her past work as a manicurist at the

2 higher semi-skilled level because of her prior success in that field.  AT 18-19, 121.

3          This finding by the ALJ unsuccessfully attempted to resolve the conflict between

4 the DOT and the vocational evidence in the record.  See SSR 00-4p.  However, at the hearings

5 level, the ALJ is required to elicit testimony on the record from a vocational expert (VE) in the

6 event of a conflict.  Id.  There was no such testimony in this case.

7          This error was harmless.  See Curry, 925 F.2d at 1129.  In the alternative to his

8 unsupported finding that plaintiff could perform her past relevant work as a manicurist, the ALJ

9 employed the Medical-Vocational Guidelines ("the grids") to determine that plaintiff was not

10 disabled.  The grids are in table form.  The tables present various combinations of factors the ALJ

11 must consider in determining whether other work is available.  See generally Desrosiers, 846 F.2d

12 at 577-78 (Pregerson, J., concurring). The factors include residual functional capacity, age,

13 education, and work experience.  For each combination, the grids direct a finding of either

14 "disabled" or "not disabled."

15          There are limits on using the grids, an administrative tool, to resolve individual

16 claims that fall into standardized patterns:  "[T]he ALJ may apply [the grids] in lieu of taking the

17 testimony of a vocational expert only when the grids accurately and completely describe the

18 claimant's abilities and limitations."  Jones, 760 F.2d at 998; see also Heckler v. Campbell, 461

19 U.S. 458, 462 n.5, 103 S. Ct. 1952, 1955 n.5 (1983).  The ALJ may rely on the grids, however,

20 even when a claimant has combined exertional and nonexertional limitations, if nonexertional

21 limitations are not so significant as to impact the claimant's exertional capabilities.[10]  Bates v.

22

23          [10]  Exertional capabilities are the "primary strength activities" of sitting, standing, walking, lifting, carrying, pushing, or pulling.  20 C.F.R. § 416.969a (b) (2003); SSR 83-10,
24 Glossary; compare Cooper v. Sullivan, 880 F.2d 1152, 1155 n. 6 (9th Cir.1989).
          Non-exertional activities include mental, sensory, postural, manipulative and
25 environmental matters that do not directly affect the primary strength activities. 20 C.F.R. § 416.969a © (2003); SSR 83-10, Glossary; Cooper, 880 F.2d at 1155 & n. 7 (citing 20 C.F.R. pt.
26 404, subpt. P, app. 2, § 200.00(e)).  "If a claimant has an impairment that limits his or her ability

1   Sullivan, 894 F.2d 1059, 1063 (9th Cir. 1990), overruled on other grounds, Bunnell, 947 F.2d

2   341(en banc); Polny, 864 F.2d at 663-64; see also Odle v. Heckler, 707 F.2d 439 (9th Cir. 1983)

3   (requiring significant limitation on exertional capabilities in order to depart from the grids).

4            The ALJ found plaintiff's exertional limitations precluded some activities;

5   however, substantial evidence supports his assessment of plaintiff's residual functional capacity

6   and her ability to work at the light level.  Light work involves lifting no more than 20 pounds at a

7   time and a "good deal" of walking or standing.  20 C.F.R. § 416.967(b).  This exertional

8   limitation is supported by multiple medical opinions in the record, including the opinions of Dr.

9   Roberson and the DDS.

10           Plaintiff's nonexertional limitations are also accurately captured in the requirement

11  for unskilled work.  Nonexertional limitations are non-strength related limitations; including

12  mental, sensory, postural, manipulative, and environmental limitations.  Desrosiers, 846 F.2d at

13  579 (9th Cir.1988); 20 C.F.R., Pt. 404, Subpt. P,  Appendix 2, § 200.00(e).  The ALJ found

14  plaintiff suffering from the nonexertional limitations of a severe anxiety-related disorder as well

15  as low intellectual functioning.

16           This impairment manifested itself in an inability to perform complex work.  Dr.

17  Canty found plaintiff capable of performing simple, repetitive tasks.  AT 205.  Furthermore, the

18  DDS found plaintiff limited only by her ability to perform complex tasks, as well as changes in

19  the workplace.  AT 214-15.  These minimal limitations are adequately captured by the automatic

20  and basic nature of unskilled work.

21           Unskilled work needs little or no judgment to perform simple duties and can

22  generally be learned on the job in 30 days or less.  20 C.F.R. § 404.1568(a).  Unskilled work does

23  not require working with people.  20 C.F.R. Pt. 404, Subpt. P, App. 2, Rules 201.00(I), 202.00(g);

24  _____

25  to work without directly affecting his or her strength, the claimant is said to have nonexertional
    (not strength-related) limitations that are not covered by the grids."  Penny v. Sullivan, 2 F.3d
26  953, 958 (9th Cir. 1993) (citing 20 C.F.R., pt. 404, subpt. P, app. 2 § 200.00(d), (e)).

1    SSR 85-15.  A plaintiff does not gain work skills by performing unskilled work.  20 C.F.R.

2    § 404.1568(a).  Given her nonexertional limitations, there is nothing about the nature of unskilled

3    work that falls outside the skills possessed by plaintiff.

4         The ALJ's decision is fully supported by substantial evidence in the record and

5    based on the proper legal standards.  Accordingly, IT IS HEREBY ORDERED that:

6         1.  Plaintiff's motion for summary judgment or remand is denied, and

7         2.  The Commissioner's cross-motion for summary judgment is granted.

8    DATED:  August 18, 2006.

UNITED STATES MAGISTRATE JUDGE

13/bowen.ss

20